JAMES *v.* MURRY.

4-7733 190 S. W. 2d 438

Opinion delivered November 19, 1945.

*J: R. Long,* for appellant.

*Hebert & Dobbs,* for appellee.

GRIFFIN SMITH, Chief Justice. The suit, although not designated as such, was originally an action in ejectment. The plaintiffs filed with their complaint the deed through which ownership was acquired by Fred Murry, sufficiency of which was conceded. When Murry died, his wife and three children succeeded to the title. Through their agent, W. T. Hawkins, a Hot Springs realtor, contract of sale for $350 was made with C. C. James in 1935. The down payment was $5, balance to be $10 monthly.[1]

The litigation was transferred to equity when James answered and cross-complained. He alleged that a conditional tender of all sums due had been made more than a year before the Murrys sought possession, but contended that an abstract to which he was entitled had not been supplied. On hearing there was testimony that an $86 judgment against Mrs. Murry was a lien on the land. Other defenses were interposed.

The Court found essential terms of the contract had been violated by James; that the plaintiffs were not at fault, and that possession was wrongfully withheld.

---

[1] The final payment was $5.

Appellees have moved that the appeal be dismissed because Rule Nine of this Court has been disregarded in this: "The oral testimony mentioned in the decree and taken in this case was not preserved. . . . All of this important and vital evidence, taken with the evidence set out in the transcript, was more than enough to justify the findings and judgment of the Chancery Court."

The Clerk's certificate is that the transcript ". . . [contains] a true and complete . . . record of the proceedings." Appellant has not filed a reply brief, nor has he otherwise challenged appellees' statements respecting incompleteness of the record.

The abstract copies the pleadings and Court orders, and concludes page six with this statement: "June 1944 Term. The following proceedings were had. . . ." Then there is printed the contract Hawkins made for appellees in 1935, and notation that it was filed by counsel. There is no other identification of the writing. Next there is a schedule of payments, effect of which, *prima facie,* is to show that during August, September, and October, 1935, Hawkins received $20 from James, and in December of the same year, and through January and February, 1936,[2] Mrs. Murry was paid $30.

We refer to this showing as *prima facie* because the names "W. T. Hawkins," and "Alice Murry," appear in print and inferentially were copied from an original document. Numerous items are entered under the heading, "Amounts Paid Out on the Contract." The grand total is $274.77. James' deposition was subsequently read, but at a time when its sequence to the original exhibit—if such it may be called—was broken. He did, however, testify to the extended charges, and as to the payments alleged to have been made.

Finally, there is presented what purports to be an abstract of the evidence, including the *deposition* of Alice Murry, the *testimony* of James Ussery, the *testimony* of C. C. James, and the *testimony* of Filmore Meadows. The decree recites that the cause was heard ". . . on the

---

[2] A payment presumptively receipted for by Mrs. Murry is dated "Jan. 4-35." This was probably January, 1936.

*depositions* of Alice Murry, in her own behalf and in behalf of her co-plaintiffs; *other depositions in behalf of the plaintiffs;* the *deposition* of the defendant . . . in his own behalf," . . . and concludes with the statement that evidence was taken *ore tenus* at the bar of the Court.

We have italicized the words "testimony" and "depositions" to identify terms used by the Chancellor—a distinction not observed by appellant's counsel in abstracting the evidence. From this difference in terminology it might be inferred that some of the oral testimony was not preserved, and that the Court's findings may have been predicated upon facts not appearing of record—hence the prayer of appellees that the appeal be dismissed.

Our conclusion is that while the true status is not reflected in a manner entirely harmonious with Rule Nine, inadvertence has probably resulted in presentation of a record more susceptible to attack than deficient in substance, and that other errors have added to appellant's difficulties. For example, the "testimony" of James Ussery, as designated in the abstract,[3] concludes on page fourteen with the statement that James "also built a barn and garage." On page fifteen the first sentence is: "The purchase price was $350 for the Murry tract of land involved in this suit, and I have paid $274.77, and that left a balance of $75.23 due, and I have deposited a check for that amount with the Clerk of the Garland Chancery Court about sixteen months ago, to be paid when I get a good title to the property."

Now, obviously, this is not the testimony of James Ussery; but by reference to the transcript (which we are not required to explore) it is found that C. C. James, in a deposition, said precisely what Ussery is represented as having told the Court as to the final matter quoted in the preceding paragraph. The garbled context seems to have resulted from an erroneous "make-up," or printer's "take," in paging the Linotyped matter. Additional testimony given by appellant James is credited to Ussery.

---

[3] This, in reality, was a deposition read in behalf of appellees.

Following that part of the abstract just referred to, and as cross-examination, Ussery is quoted as follows: "His witness testified that appellant had cut appellant, Mr. James, had told him that Mrs. Murry could not give a good title to the land in question because E. E. Davis was living on part of it."

What seems to have happened is that Davis occupied a small part of the property and James sought to dispossess him. In consequence James claims to have expended substantial sums he says were authorized by Mrs. Murry, and these were urged as offsets to the contractual obligation.

The appeal may be affirmed on its merits. The judgment lien James complains of did not attach until long after James had defaulted in his payments. Under the contract he was not entitled to an abstract until all payments had been made; but, be that as it may, (and we do not hold that this circumstance was controlling) the Chancellor found in effect that James' refusal to pay was not justified by condition of the title, and that the charges he had built up were arbitrary. The Court also found that use of the property fully compensated appellant for improvements he had made and for incidental claims he pressed.

Assuming that the entire record was presented on appeal and that failure to fully meet the requirements of Rule Nine was partially attributable to appellant's printer, the fact remains that the burden of demonstrating that the decree was contrary to a preponderance of the evidence has not been met; so the decree must be affirmed. It is so ordered.